UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LORENZETTA K. WHITFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-263 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Lorenzetta Whitfield appeals the denial of her claim for social security disability benefits. For the reasons stated below, the Court will remand this matter to the Commissioner for further proceedings.

### I. BACKGROUND

Lorenzetta Whitfield ("Whitfield") filed her initial application for disability benefits in June 2014 alleging that she became disabled on November 1, 2013. She filed the application due to neck and shoulder pain, carpal tunnel syndrome ("CTS"), forearm tendinitis, TMJ, diabetes, high blood pressure, glaucoma, sleep disorder, anxiety, and depression. Her application was denied initially, on reconsideration, and following an administrative hearing held on December 5, 2016.

Originally from Los Angeles, California, Whitfield moved to Michigan City, Indiana, in September 2013 after becoming the victim of a violent crime. While in Los Angeles, she had worked for at least twenty years as a dispatcher for the Department of Transportation in Caltrans. When co-workers quit and Whitfield's job required her to work without breaks, she started

suffering from dangerously high blood sugar, neck pain, and bilateral forearm/wrist/hand strain. She eventually had to stop working due to her health problems.

During the administrative hearing, Whitfield explained that she continues to have bad days because of her pain. She has difficulty gripping and using her hands for any longer than fifteen minutes which then necessitates a lengthy break. It can take days for Whitfield and her sister (who is also very ill) to clean a single room. Whitfield also suffers from anxiety and depression which causes her to be forgetful. Whitfield testified that every day she takes an "antidepressant called Prozac" and that she has been waiting for authorization through her workers compensation program to attend treatment with a licensed psychiatrist or psychologist. Whitfield described how she is frequently given the runaround with getting treatment approved since having moved to Indiana. And despite being prescribed a host of medications, Whitfield tries to refrain from taking too much medication because she is in the process of donating a kidney to her sister. She has tried to seek out healthier, non-conventional therapies in order to avoid injuring her kidneys and liver.

By way of history, in 2010, Whitfield developed pain in her cervical and thoracic spine, shoulders, and wrists. An EMG/nerve conduction study on June 28, 2011, revealed early diabetic peripheral neuropathy and a high suggestion of diffuse ulnar neuropathy at the cubital tunnel. Physical examinations were completed in early 2011 and 2012 (for workers compensation purposes) by orthopedic surgeon Dr. Lee Silver. Dr. Silver noted that Whitfield's subjective complaints and objective exam findings were consistent with her suffering from bilateral shoulder impingement and CTS,[1] along with early diabetic peripheral neuropathy and cervical

---

[1] Bilateral CTS can cause numbness, tingling, weakness, or pain in the forearms, hands, or fingers. *Cubital Tunnel Syndrome*, AMERICAN SOCIETY FOR SURGERY OF THE HAND, https://www.assh.org/handcare/hand-arm-conditions/cubital-tunnel (last visited July 24, 2019).

and thoracic musculoligamentous strain/sprain. By January 2012, Dr. Silver opined that Whitfield had reached maximum medical improvement and that she was unable to perform repetitive cervical spine movements or repetitive "fine manipulation" for greater than thirty minutes without a five-minute break. It was recommended that she continue to receive treatment, including injections and surgical intervention.

By November 2012, Whitfield's re-evaluation with orthopedic surgeon Dr. Philip Sobol resulted in his documenting that Whitfield was suffering from increased neck, shoulder, and CTS symptoms, in addition to experiencing stress, anxiety, depression, and difficulty sleeping. He believed that Whitfield was temporarily totally disabled. Whitfield returned to Dr. Sobol many times and continued to receive the same diagnoses. In January 2014, Dr. Sobol reported that Whitfield was restricted from bending and twisting her neck and from performing fine manipulation or engaging in repetitive use of her hands, including use of a keyboard or mouse.

A consultative medical examination by Dr. R. Jao in August 2014, resulted in his impression that Whitfield had a history of cervical spine injury, CTS, tendinitis, TMJ, diabetes, glaucoma, high blood pressure, depression, and sleep disorder since at least 2010. He observed that Whitfield continued to have decreased grip strength despite being able to button, zip, and pick up coins. However, no specific functional limitations were charted.

Whitfield continued to see nurse practitioners Brenda Winski and Nicolette Alexander throughout 2014 and 2015 for her continued ailments. Their documents reflect that Whitfield was suffering from mental health conditions, including PTSD, anxiety, depression, and psychotic paranoia. It was strongly recommended that Whitfield see a psychiatrist as opposed to her neuro-feedback therapist. A mental status examination from July 2014, which was conducted by state

3

agent and licensed psychologist John Heroldt, indicated that Whitfield suffered from recurrent major depressive disorder. However, again, no specific functional limitations were charted.

In January 2016, Whitfield was given a functional capacity summary regarding her physical conditions by physical therapist Charles Wolf. Mr. Wolf opined that Whitfield could physically perform work at the sedentary level, but he noted that she was unable to use her hands even occasionally for simple tasks. He further noted that Whitfield's range of motion and strength in her wrists were impaired, and he documented various physical limitations discovered while having her perform a series of non-material handling activities. Nurse Practitioner Alexander agreed with these limitations, which she opined dated back as far as July 2013 and could be expected to last at least twelve months.

State reviewing agents opined in September 2014 and January 2015 that Whitfield suffered no severe physical impairments, and that her mental condition resulted in no restrictions in activities of daily living and only mild difficulties with maintaining social functioning and concentration, persistence, or pace.

The administrative law judge ("ALJ") concluded that Whitfield was not entirely credible with respect to her claimed restrictions and that she had the residual functional capacity[2] to perform sedentary work limited by the lifting of no more than ten pounds, frequent (but not constant) reaching, handling, and fingering, and occasional overhead reaching. The vocational expert ("VE") indicated that given this assigned RFC, Whitfield could perform her former job as a dispatcher. However, if Whitfield were further limited to unskilled tasks, then she would not be able to perform her past work or other work given her age.

---

[2] Residual Functional Capacity ("RFC") is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. DISCUSSION

Disability insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, then in between steps three and four, the ALJ then assesses the claimant's RFC, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs

in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Whitfield offers three primary reasons for remand: (1) the ALJ failed to support his RFC determination with substantial evidence, especially with respect to Whitfield's ability to use her hands; (2) the ALJ failed to consider whether Whitfield met or medically equaled Listing 11.14; and (3) the Appeals Council failed to consider new and material evidence which supported Whitfield's being mentally limited to unskilled work, and thus, disabled under the grids. For the reasons expressed below, the Court will remand this matter to the Commissioner due to the ALJ's failure to support Whitfield's assigned RFC with substantial evidence and will invite the ALJ to address Whitfield's remaining contentions on remand.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id*.; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The ALJ in this case concluded that Whitfield had the RFC to perform sedentary work limited by lifting no more than ten pounds, using her hands frequently instead of constantly, and reaching overhead occasionally. In making his determination, the ALJ essentially discounted

7

each and every medical provider's opinion, except the opinion of consultative examiner Dr. Jao. The problem here is that Dr. Jao's report never translated his physical assessment of Whitfield into work-related functional limitations. For instance, Dr. Jao's notation that Whitfield could "button, zip, and pick up coins" says little about her ability to perform fulltime work involving the frequent use of her hands without additional unscheduled (let alone, lengthy) breaks. Thus, the ALJ could only conclude that Dr. Jao's findings supported the upper extremity functional limitations included in his RFC by impermissibly playing doctor. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding that the ALJ played doctor by relying on the results of a medical test without having it reviewed by a physician).

While it is true that the state agents opined that Whitfield did not suffer from any severe physical impairment and was not disabled, the ALJ did not rely on these medical opinions. Instead, the ALJ determined that the state agent opinions were entitled to "little weight" because Whitfield suffered from severe CTS. The ALJ supported his finding by explaining that Whitfield's CTS was reflected by diagnostic testing and her continuous treatment for it, which thereby "warrant[ed] a severe impairment finding and, thus [related] limitations." Accordingly, although the agents' opinions could have provided some support for a non-disability finding, the ALJ failed to rely on them or any medical opinion which stated that Whitfield retained the capacity to frequently use her hands for purposes of fulltime work.

In fact, throughout Whitfield's course of treatment (from as early as 2012 through January 2014), examining doctors opined that Whitfield was unable to engage in repetitive use of her hands for any longer than thirty minutes, if at all.[3] In January 2016, a physical therapist

---

[3] The ALJ's discounting of the orthopedic surgeons' opinions in this respect because they were given prior to the alleged onset date, demonstrated only "temporary" limitations, and were provided for workers compensation purposes, fail to recognize that Whitfield presented medical

8

indicated that Whitfield was even further limited in her ability to use her hands, and a treating nurse practitioner agreed that such increased limitations existed since July 2013.

Despite the consistency of these medical findings, the ALJ relied on Dr. Jao's one-time assessment from August 2014 reflecting that despite slightly diminished upper extremity strength and ability to grip, Whitfield retained a "full range of motion . . . with good fine finger manipulative abilities." Yet, again, Dr. Jao's opinion did not address Whitfield's functional limitations for sustained work. Rather, the ALJ erroneously substituted his own knowledge for that of any trained physician or medical staff in determining Whitfield's RFC. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that the ALJ's rejection of a treating physician's opinion created an evidentiary deficit requiring remand, where other evidence in the record did not address the claimant's functional limitations); *Fly v. Colvin*, No. 3:14-cv-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) ("An ALJ is not a doctor, and his limitations must find a basis in the evidence."). Because evidence existed which indicated that Whitfield's hand limitations and pain were debilitating, it was the ALJ's responsibility to recognize the need for a further medical evaluation for purposes of deriving Whitfield's actual RFC. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000).

Also requiring remand are the ALJ's other misguided reasons for discounting the extent of Whitfield's hand limitations, along with her mental restrictions. The ALJ further discounted

---

evidence demonstrating longitudinal treatment for ongoing limited hand function. In fact, even Dr. Jao concluded that Whitfield's CTS and tendinitis existed since 2010. Moreover, the ALJ failed to explain how the inability to use one's hands for repetitive fine manipulation would somehow depend on whether the standards for social security disability versus workers compensation were applied.

Whitfield's claimed hand limitations because she was allegedly non-compliant with attending physical therapy and "failed to treat for her carpal tunnel syndrome since prior to her onset date." Yet, the record demonstrates that Whitfield was continually treated for her CTS (as recognized by the ALJ at one point). The record also shows that Whitfield intended to restart physical therapy, but oftentimes she had problems getting treatment approved through her workers compensation program. Similarly, the ALJ discounted Whitfield's claimed mental health limitations because she was "not on any medication for any mental impairment and ha[d] not gone to therapy." Yet, the record reflects that Whitfield was taking Prozac on a daily basis and regularly seeing a counselor while waiting for permission to see a licensed psychiatrist or psychologist through her workers compensation claim. Moreover, Whitfield hesitated to take too much medication due to health concerns. Thus, the Court cautions that on remand, the ALJ should avoid the pitfalls of mischaracterizing the evidence and/or discrediting evidence because of Whitfield's failure to seek a certain type of treatment without setting forth how Whitfield's explanations have been taken into account by the ALJ. *See Myles v. Astrue,* 582 F.3d 672, 677 (7th Cir. 2009) (stating that the ALJ was required by Social Security Rulings to consider explanations for instances where the plaintiff did not keep up with treatment); SSR 16-3p. The Court further cautions the ALJ against placing undue weight on a claimant's household activities in assessing her ability to work outside the home especially without considering how those activities are performed. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (reasoning that the pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work). For instance, the ALJ discounted Whitfield's alleged limitations in part based on her function report which indicated that Whitfield prepares her own meals, cleans

house twice a week, and completes laundry. However, the report actually documents that Whitfield only prepares simple meals because her wrists swell, she must sit to fold clothes, she must take breaks while cleaning, and she mows only half of the lawn in the morning and the other half at night. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time).

For each of the reasons discussed, the Court cannot conclude that the ALJ's decision to discount the extent of Whitfield's hand limitations and mental disorders were supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to the opinions of the examining and treating medical professionals or to Whitfield's subjective complaints, that could result in a more restrictive RFC finding.[4] And given Whitfield's age, further restrictions in the RFC determination may very well result in an automatic finding of disability under the grids. Accordingly, the Court remands this action to the Commissioner for further proceedings.

## IV. CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

---

[4] Because an unsupported RFC served as the basis of the VE's testimony and the ALJ's finding that Whitfield could perform her past work as a service dispatcher (but not as a "fast food worker," as referred to by the ALJ), the Court cannot affirm the step 4 finding.

SO ORDERED.

ENTERED: August 5, 2019

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court